## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

TRACFONE WIRELESS, INC.,
a Delaware Corporation,

      Plaintiff,                              **(Jury Trial Demanded)**

v.

COMERCEL COMERCIALIZADORA
DE CELULARES, S.A. de C.V., a foreign
corporation,

      Defendant.                       /

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff TracFone Wireless, Inc. ("TracFone"), a Delaware corporation, sues Defendant

ComerCel Comercializadora de Celulares, S.A. de C.V. ("ComerCel"), a foreign corporation and

states as follows:

1.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs,

and attorneys' fees, and for injunctive relief arising out of Defendant's unlawful business

enterprise that willfully infringes on TracFone's incontestable federal trademarks, copyrights and

other rights related to TracFone's prepaid wireless service and the wireless telephones

("TracFone Prepaid Phones" or "Phones") that are specially manufactured for TracFone to be

used with its wireless service marketed and sold under one of TracFone's five brands:  TracFone,

NET10, SafeLink Wireless, Straight Talk and  ("spiracle logo").

2.      As set forth in greater detail below, Defendant is engaged in unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software installed in the Phones, trafficking of the Phones for profit, and other violations of Federal statutory law.

## PARTIES

3.      Plaintiff TracFone is a Delaware corporation that maintains its principal place of business in Miami-Dade County, Florida.

4.      TracFone is thus a citizen, resident and domiciliary of the states of Florida and Delaware for the purpose of this Court's alienage jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

5.      Defendant ComerCel is a foreign corporation with its place of business located at Final Calle Sierra Madre No. 6, Resid. Y Pje. Bernal, San Salvador, El Salvador that has engaged in illicit conduct and business transactions in the Southern District of Florida as alleged herein.

6.      ComerCel is thus a citizen, resident and domiciliary of the Republic of El Salvador for the purpose of this Court's alienage jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

7.      All conditions precedent to filing this action have been performed, waived or excused.

8.      TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## JURISDICTION

9.      The Court has subject matter jurisdiction based federal question jurisdiction pursuant to 28 U.S.C. §§1331, 1338, and 17 U.S.C. §1203 because TracFone's claims for violations of the United States Trademark Act, Title 15 of the United States Code, and United States Copyright Act, Title 17 of the United States Code, arise under federal law.

10.     The Court also has subject matter jurisdiction based federal alienage jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), as this is an action between a citizen of the United States (and the states of Delaware and Florida) and a citizen of a foreign state (the Republic of El Salvador).

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

12.     Defendants have engaged in systematic and ongoing business transactions in the State of Florida with citizens of the State of Florida, and within this District.

13.     Defendant purchased and sold substantial quantities of TracFone Prepaid Phones to and from companies and individuals located within this District.

14.     On information and belief, Defendant has purchased and sold at least tens of thousands of TracFone Prepaid Phones worth several million dollars to and from companies and individuals located within this District.   These actions have caused substantial damage to TracFone within this District.   TracFone expects to uncover evidence of many additional transactions through the discovery process in this action, but is already aware of substantial illicit transactions by Defendant within this District.

15.     Specifically, Defendant's activities include multiple transactions involving the sale and/or purchase of thousands of TracFone Prepaid Phones at prices totaling approximately $1,284,385.00 with Miranda Holdings Corp., a Florida Corporation, d/b/a Incomtel ("Incomtel") in connection with the Bulk Resale Scheme, as defined below.   TracFone obtained a Final Judgment and Permanent Injunction in the United States District Court for the Southern District of Florida against Incomtel based upon factual and legal claims substantively similar to those raised herein.  *See* **Exhibit "A."**

16.     Defendant is subject to the general personal jurisdiction of this Court because it has had continuous and substantial business connections to the State of Florida, including conducting business with companies located in Miami-Dade County, Florida.

17.     Defendant is further subject to the personal jurisdiction of this Court pursuant to: Fla. Stat. §48.193(1)(a) because it has conducted, engaged in and carried out business ventures within the State of Florida; §48.193(1)(b) because it has committed tortious acts within the State of Florida; and §48.193(1)(g) by failing to perform acts required by a contract to be performed in the State of Florida.  Moreover, Defendant is also subject to this Court's personal jurisdiction pursuant to §48.193(2) because it has engaged in substantial and not isolated business activity within the State of Florida.

18.     By virtue of (a) operating, conducting, engaging in, or carrying on a business venture in this state and/or (b) by engaging in substantial and not isolated activity within the State of Florida, Defendant, who is a non-resident of the State of Florida has accepted the privilege extended by law to non-residents of the State of Florida to operate, conduct, engage in, or carry on a business or business venture in the state, and is thus subject to service of process pursuant to FLA. STAT. §48.181(1).

<u>**VENUE**</u>

19.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b), and 28 U.S.C. §1400, because a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendant's misconduct occurred in this District, and Defendant is subject to personal jurisdiction in this District.

<u>BACKGROUND</u>

20.    This is an action for damages and injunctive relief arising out of Defendant's unlawful business enterprises that willfully infringe on TracFone's incontestable trademarks, copyrights and other rights related to TracFone's prepaid wireless service marketed under the TracFone, NET10, SafeLink Wireless, Straight Talk and spiracle logo brands ("TracFone's Prepaid Wireless Service") and TracFone Prepaid Phones designed for use exclusively in the United States, Puerto Rico, and U.S. Virgin Islands with TracFone's Prepaid Wireless Service.

21.    As set forth in greater detail below, Defendant is engaged in, and knowingly facilitates and encourages others to engage in, unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software computer code installed in the Phones, and trafficking of the Phones for profit (the "Bulk Resale Scheme").

22.    Defendant and/or its co-conspirators perpetrated their Bulk Resale Scheme by, among other things, acquiring bulk quantities of TracFone Prepaid Phones from internet sites and retail stores such as Wal-Mart, Target or Sam's Club, and by soliciting others ("Runners") to purchase TracFone Prepaid Phones in bulk for the benefit of Defendant.

23.    Defendant and/or its co-conspirators then removed the TracFone Prepaid Phones' original packaging and ship them overseas.

24.    Defendant and/or its co-conspirators acquired the TracFone Prepaid Phones with the knowledge and intent that the Phones will not be activated for use on the TracFone Prepaid wireless networks.  Instead, the Phones are computer-hacked.

25.     The process of computer hacking or "unlocking" or "reflashing" TracFone Prepaid Phones involves circumventing the electronic protections installed in the handset, and then altering, erasing, removing and/or disabling TracFone's copyrighted and proprietary software installed in the Phones.   Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable on TracFone's prepaid wireless virtual network, and is operable on other cellular networks.  Furthermore, after a TracFone Prepaid Phone is unlocked or reflashed, TracFone no longer has a revenue source to recoup the invested subsidy on that phone.

26.     The reflashed Phones are then trafficked and resold, at a premium, as new, under TracFone's trademarks.

27.     Defendant is not, and has never been, an authorized retailer or distributor of TracFone Prepaid Phones.

28.     In an effort to prevent these unlawful business practices, TracFone retailers have implemented policies limiting the number of TracFone Prepaid Phones an individual may purchase on a daily basis.

29.     Defendant and/or its co-conspirators hired Runners and took other steps to circumvent retailers' sales limitation policies in order to continue perpetrating its Bulk Resale Scheme.

30.     Defendant's conduct, together with that of currently unknown civil and criminal co-conspirators, is causing TracFone to suffer millions of dollars in losses and has caused immediate and irreparable injury to TracFone.

<u>**T**RAC**F**ONE'S **B**USINESS **M**ODEL</u>

31.     TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the TracFone, NET10, SafeLink Wireless, Straight Talk and spiracle logo brands.  TracFone's service enables its customers to prepay for their wireless service by purchasing TracFone airtime cards and specially manufactured wireless Phones.  Customers load airtime into their TracFone Prepaid Phones using codes generated from PIN numbers found on the airtime cards, or via TracFone's website.  TracFone Prepaid Phones and airtime cards are sold through major national retailers such as Wal-Mart, Target, and Best Buy.

32.     TracFone is considered a "Mobile Virtual Network Operator" or "MVNO" in the wireless industry.  TracFone is not a facilities-based wireless provider like AT&T, Verizon, T-Mobile or Sprint/Nextel.  Rather, TracFone contracts with facilities-based wireless providers to purchase airtime on their networks for use by TracFone's customers.

33.     TracFone's business model is based upon TracFone's ability to deliver an affordable product to consumers.  Therefore, TracFone subsidizes its customers' acquisition of the TracFone Prepaid Phones by selling its Phones for substantially less than the Phones cost TracFone.  TracFone recoups these subsidies through profits earned on the sale of the TracFone prepaid airtime cards that are required to make and receive calls on the TracFone Prepaid Phones.  TracFone is able to offer its Phones at affordable prices only if the Phones are used as intended with the TracFone Prepaid Wireless Service.

34.     Manufacturers that produce Phones for TracFone install special proprietary prepaid software, developed, copyrighted, and owned by TracFone ("TracFone Prepaid Software"), into the TracFone Prepaid Phones.  The TracFone Prepaid Software prevents TracFone Prepaid Phones from being used without loading airtime minutes from a TracFone Prepaid airtime card.

## TracFone's Federally Protected Rights

35.     TracFone is one of the oldest and leading providers of prepaid wireless telecommunications services in the United States.  TracFone has used, and continues to use, trademarks in commerce including the marks TracFone, NET10, SafeLink, Straight Talk and spiracle logo.  In particular, TracFone owns and has also used the registered trademarks identified below:

a.     Incontestable United States Trademark Registration No. 2,114,692 for TracFone, used in connection with: (1) electronic communications equipment, namely, cellular telephones, prepaid airtime cellular telephones and cellular telephone accessories, namely, prepaid airtime debit cards, battery chargers, stands, antennae, voice amplifiers and microphones; computer programs for use in controlling and monitoring prepaid airtime cellular telephone service, in International Class 9; (2) providing cellular telephone services and providing monitoring and control services for use in conjunction with prepaid airtime cellular phones and debit cards, in International Class 38; and (3) wholesale distributorship featuring of cellular telephones, prepaid airtime cellular telephones and prepaid airtime debit cards, and software for controlling and monitoring prepaid airtime cellular service, in International Class 42, issued on November 18, 1997 and based on a first use date of June 30, 1996;

b.     United States Trademark Registration No. 3,224,929 for TracFone Nationwide Prepaid Wireless and Design, used in connection with electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters, batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International Class 9, issued on April 3, 2007 and based on a first use date of December 31, 2005;

c.     United States Trademark Registration No. 3,222,623 for TracFone Nationwide Prepaid Wireless and Design, used in connection with distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on March 27, 2007 and based on a first use date of December 31, 2005;

d.     United States Trademark Registration No. 3,118,250 for NET10, used in connection with: (1) monitoring the use of debit cards, in International Class 36; and (2) providing monitoring and control services for use in conjunction with prepaid air time cellular and mobile phones, in International Class 38, issued on July 18, 2006 and based on a first use date of March 1, 2005;

e.     United States Trademark Registration No. 3,255,754 for NET10 Pay As You Go Made Simple and Design, used in connection with cellular telephone communications services provided via prepaid air time cellular telephones and prepaid air time cellular calling card services, in International Class 38, issued on June 26, 2007 and based on a first use date of December 31, 2005;

f.     United States Trademark Registration No. 3,253,506 for NET10 Pay As You Go Made Simple and Design, used in connection with electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, telephone battery chargers, telephone battery charger stands, telephone antennae, headset kits comprised of hands free electronic earpiece with microphone and holster specially adapted for cell phones, hands free headsets comprising head-phones and a microphone, cases with flaps specially adapted for cell phones, power adapters, batteries, carry sleeves specially adapted for cell phones, decorative cell phone face plates, belt clips, holsters, and mounting attachments specially adapted for carrying cell phones, in International Class 9, issued on June 19, 2007 and based on a first use date of December 31, 2005;

g.       United States Trademark Registration No. 3,251,389 for NET10 Pay As You Go Made Simple and Design, used in connection with distributorship services featuring cellular telephones, prepaid air time cellular telephones and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on June 12, 2007 and based on a first use date of December 31, 2005;

h.       United States Trademark Registration No. 3,752,933 for SafeLink Wireless, used in connection with: (1) prepaid telecommunications cellular telephone calling card services, in International Class 36; and (2) cellular telephone communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones; cellular telephone telecommunications services provided via prepaid air time telephone calling cards in International Class 38, issued on February 23, 2010 and based on a first use date of August 1, 2008;

i.       United States Trademark Registration No. 3,630,321 for SafeLink Wireless and Design, used in connection with cellular telephone communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones and prepaid air time cellular telephone calling card services, in International Class 38, issued on June 2, 2009 and based on a first use date of September 12, 2008;

j.       United States Trademark Registration Nos. 3,794,491, 3,788,435, and 3,788,436 for Straight Talk, used in connection with: (1) electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters, batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International

Class 9; (2) on-line retail store services featuring cellular telephones, pre-paid wireless air time cards, cellular telephone accessories and wireless services; distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35; and (3) cellular telephone communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones and via prepaid cellular telephone calling cards, in International Class 38, issued on May 25, 2010, May 11, 2010, and May 11, 2010, respectively and all based on a first use date of June 1, 2009;

        k.      United States Trademark Registration Nos. 3,794,595 and 3,791,253 for Straight Talk and Design, used in connection with: (1) electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters, batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International Class 9; and (2) on-line retail store services featuring cellular telephones, pre-paid wireless air time cards, cellular telephone accessories and wireless services; distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on May 25, 2010 and May 18, 2010, respectively, and based on a first use date of June 1, 2009; and

        l.      Incontestable United States Trademark Registration No. 2,786,917 for the Spiracle logo, used in connection with: (1) electronic communications equipment, namely, cellular telephones, prepaid air time cellular telephones and cellular telephone accessories,

namely, prepaid air time magnetic debit cards, battery chargers, stands, antennae, voice amplifiers and microphones; computer programs for use in controlling and monitoring prepaid air time cellular telephone services, in International Class 9; (2) non-magnetic prepaid air time debit cards, in International Class 16; and (3) providing cellular telephone services and providing monitoring and control services for use in conjunction with prepaid air time cellular phones and debit cards, in International Class 38, issued on November 25, 2003 and based on a first use date of March 1999.

36.     TracFone's aforementioned marks (the "Marks") constitute the lawful, valued, subsisting and exclusive property of TracFone, and as a result of the high quality of TracFone's products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone, and are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality. True copies of the certificates of registration issued by the United States Patent and Trademark Office for the Marks are attached as **Composite Exhibit "B."**

37.     Only TracFone and its affiliates are allowed to use TracFone's Marks. Defendants are not affiliated with TracFone and, therefore, cannot use TracFone's trademarks.

38.     TracFone owns a valid copyright registration, TX 6-515-894, on the TracFone Prepaid Software. A copy of the certificate of registration is attached as **Exhibit "C."** Pursuant to the copyright application, the software was created in 2002 and first used in commerce on January 1, 2003. *Id.* The application for registration was filed with the Library of Congress on September 15, 2006.

### TERMS AND CONDITIONS REGARDING
### THE USE OF TRACFONE PREPAID PHONES

39.     TracFone Prepaid Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones.  These Terms and Conditions are set forth in printed inserts that are included in the packaging with every TracFone Phone, and are also available to the public on TracFone's website.  They are also referenced in printed warnings that are placed on the outside of the retail packaging of the Phones.  The Terms and Conditions and language on the packaging constitute a valid binding contract.

40.     The retail packaging in which new TracFone Prepaid Phones are sold contains the following language that is conspicuously printed in all capital letters in a red banner on the outside of the package:

> THIS TRACFONE HANDSET IS SOLD EXCLUSIVELY FOR USE WITH TRACFONE PREPAID WIRELESS SERVICE.  YOU AGREE NOT TO TAMPER WITH OR ALTER THE SOFTWARE OR HARDWARE IN THIS PHONE, OR ASSIST OTHERS IN SUCH ACTS, OR TO EXPORT TRACFONE HANDSETS OUTSIDE OF THE UNITED STATES.  THESE ACTS VIOLATE TRACFONE'S RIGHTS AND COULD VIOLATE STATE AND FEDERAL LAWS.  TRACFONE WILL PROSECUTE VIOLATORS TO THE FULL EXTENT OF THE LAW.  BY PURCHASING OR OPENING THIS PACKAGE, YOU ARE AGREEING TO THESE TERMS AND THE TERMS AND CONDITIONS OF SERVICE IN THE ENCLOSED USER GUIDE (AND AVAILABLE AT WWW.TRACFONE.COM).

41.     Packaging for TracFone's Net10; SafeLink; Straight Talk; and spiracle logo branded handsets have similar conspicuous notifications that inform purchasers that they are bound by the Terms and Conditions.

42.     The Terms and Conditions included in the TracFone handset packaging also provide, in pertinent part, as follows:

**UNAUTHORIZED USAGE; TAMPERING**.

The TRACFONE handset is sold exclusively for use by you, the end consumer, with the TRACFONE prepaid wireless Service available solely in the United States, Puerto Rico and the U.S. Virgin Islands. Any other use of your TRACFONE handset, including without limitation, any resale, unlocking and/or reflashing of the handset is unauthorized and constitutes a violation of your agreement with TracFone Wireless. You agree not to unlock, reflash, tamper with or alter your TRACFONE or its software, enter unauthorized PIN numbers, engage in any other unauthorized or illegal use of your TRACFONE or the Service, or assist others in such acts, or to sell and/or export TRACFONE handsets outside of the United States. These acts violate TRACFONE's rights and state and federal laws. Improper, illegal or unauthorized use of your TRACFONE is a violation of this agreement and may result in immediate discontinuation of Service and legal action.  TRACFONE will prosecute violators to the full extent of the law. You agree that any violation of this agreement through your improper, illegal or unauthorized use or sale of your TRACFONE shall entitle TracFone Wireless to recover liquidated damages from you in an amount not less than $5,000 per TRACFONE handset purchased, sold, acquired or used in violation of this agreement.

43.     The terms and conditions for TracFone's other brands—Net 10, SafeLink Wireless, Straight Talk and spiracle logo —each contain virtually identical language, in relevant part.

44.     The restrictions and limitations in the Terms and Conditions and on the packaging are intended to restrict the use of TracFone Prepaid Phones solely to TracFone Prepaid Wireless Service.

45.     TracFone Prepaid Phones may access TracFone Prepaid Wireless Service only within the United States, the U.S. Virgin Islands and Puerto Rico (the "Coverage Area").

46.     TracFone Prepaid Phones cannot access any wireless network outside of the Coverage Area unless the TracFone Prepaid Software is unlawfully removed or altered.

### DEFENDANT'S MISCONDUCT

47.     TracFone has discovered that, although large quantities of its Phones are being purchased at retailers throughout the United States, a significant number of these Phones are not being activated for use on the TracFone Prepaid Wireless System.

48.     Instead, entities and individuals such as Defendant is purchasing and selling TracFone Prepaid Phones in bulk quantities for use outside of the TracFone Prepaid Wireless Service and Coverage Area.  The Phones are removed from their original packaging, shipped overseas, and unlocked or reflashed.  Defendant is not an owner of a copy of the TracFone Prepaid Software, and its unlocking or reflashing is not done solely in order to connect to a wireless telephone communication network; rather, its misconduct is for the purpose of profiting at TracFone's expense.

49.     The process of unlocking or reflashing TracFone Prepaid Phones involves circumventing the electronic protections installed in the handset, and then erasing, removing and/or disabling the TracFone Prepaid Software.

50.     Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable on TracFone Prepaid Wireless Service, and could be further modified so as to become operable on other cellular networks.  Once this occurs, TracFone no longer has a revenue source to recoup the invested subsidy on that Phone.

51.     Defendant knowingly and willfully engaged in an enterprise that traffics in and resells unlocked or reflashed TracFone Prepaid Phones, or TracFone Prepaid Phones that it knows, or reasonably should know, will be subsequently unlocked or reflashed and then resold under the Marks outside the Coverage Area as new for a substantial profit.

52.     Defendant's phones appear virtually identical to unaltered TracFone Prepaid Phones and have the same trademarks as used by TracFone on its unaltered and genuine Phones.

53.     Defendant's phones are sold through retail outlets, including through the internet, and appear to the customer as an authentic TracFone.  Although TracFone's advertising is much more extensive than Defendant's advertising.

54.     TracFone and Defendant sell virtually identical looking, directly competing products to the same purchasers through the same channels of trade utilizing the same advertising vehicles.

55.     Unless unlocked or reflashed, the TracFone Prepaid Phones are inoperable as wireless telecommunications devices outside the Coverage Area.

56.     The Coverage Area is plainly disclosed in TracFone's packaging and in the Terms and Conditions.  There would be no reason to ship TracFone Prepaid Phones overseas unless they were intended to be unlawfully unlocked or reflashed.

57.     Defendant has purchased thousands of TracFone Prepaid Phones from a number of known bulk resellers and dealers.

58.     Defendant has purchased and/or sold thousands of TracFone Prepaid Phones from several known bulk resellers of TracFone Prepaid Phones against whom TracFone obtained Final Judgments and Permanent Injunctions.

59.     By way of example, Defendant has engaged in the following business transactions:

a.      on or about January 12, 2007, Defendant sold approximately 1,527 TracFone Prepaid Phones to Incomtel for the approximate amount of Forty-Five Thousand Three Hundred and Thirty-Three and No Cents ($45,333.00).

b.      on or about January 27, 2007, Defendant sold approximately 1,328 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Five Thousand Eight Hundred Fifty-Six Dollars and No Cents ($35,856.00).

c.      on or about February 19, 2007, Defendant sold approximately 1,100 TracFone Prepaid Phones to Incomtel for the approximate amount of Twenty-Nine Thousand Seven Hundred Dollars and No Cents ($29,700.00).

d.      on or about February 27, 2007, Defendant sold approximately 1,408 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Eight Thousand and Sixteen Dollars and No Cents ($38,016.00).

e.      on or about March 6, 2007, Defendant sold approximately 1,325 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Five Thousand Eight Hundred and Two Dollars and No Cents ($35,802.00).

f.      on or about March 13, 2007, Defendant sold approximately 1,574 TracFone Prepaid Phones to Incomtel for the approximate amount of Forty-Two Thousand Four Hundred and Ninety-Eight Dollars and No Cents ($42,498.00).

g.      on or about March 23, 2007, Defendant sold approximately 1,584 TracFone Prepaid Phones to Incomtel for the approximate amount of Forty-Two Thousand Seven Hundred and Sixty-Eight Dollars and No Cents ($42,768.00).

h.      on or about March 29, 2007, Defendant sold approximately 1,476 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Nine Thousand Eight Hundred Fifty-Two and No Cents ($39,852.00).

        i.     on or about April 19, 2007, Defendant sold approximately 1,994 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Three Thousand Eight Hundred and Thirty-Eight Dollars and No Cents ($33,838.00).

        j.     on or about April 27, 2007, Defendant sold approximately 2,292 TracFone Prepaid Phones to Incomtel for the approximate amount of Sixty-One Thousand Eight Hundred and Eighty-Four Dollars and No Cents ($61,884.00).

        k.     on or about April 30, 2007, Defendant sold approximately 1,170 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-One Thousand Three Hundred and Ninety Dollars and No Cents ($31,390.00).

        l.     on or about May 10, 2007, Defendant sold approximately 2,580 TracFone Prepaid Phones to Incomtel for the approximate amount of Sixty-Nine Thousand Six Hundred and Sixty Dollars and No Cents ($69,660.00).

        m.     on or about May 19, 2007, Defendant sold 3,236 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Seven Thousand, Three Hundred and Eighteen Dollars and No Cents ($37,318.00).

        n.     on or about May 29, 2007, Defendant sold approximately 3,272 TracFone Prepaid Phones to Incomtel for the approximate amount of Eighty-Eight Thousand Three Hundred and Forty-Four Dollars and No Cents ($88,344.00).

        o.     on or about June 21, 2007, Defendant sold approximately 1,306 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Five Thousand Two Hundred and Sixty-Two Dollars and No Cents ($33,262.00).

p.      on or about July 19, 2007, Defendant sold approximately 1,075 TracFone Prepaid Phones to Incomtel for the approximate amount of Twenty-Nine Thousand and Twenty-Five Dollars and No Cents ($29,025.00).

q.      on or about August 23, 2007, Defendant sold approximately 2,251 TracFone Prepaid Phones to Incomtel for the approximate amount of Fifty-Three Thousand Seven Hundred and Thirty-One Dollars and No Cents ($53,731.00).

r.      on or about August 31, 2007, Defendant sold approximately 1,362 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Two Thousand Five Hundred and Fifteen Dollars and No Cents ($32,515.00).

s.      on or about September 7, 2007, Defendant sold approximately 1,565 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Eight Thousand One Hundred and Thirty-Five Dollars and No Cents ($38,135.00).

t.      on or about September 14, 2007, Defendant sold approximately 679 TracFone Prepaid Phones to Incomtel for the approximate amount of Sixteen Thousand Three Hundred and Seventy-Six Dollars and No Cents ($16,376.00).

u.      on or about September 22, 2007, Defendant sold approximately 1,094 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty Thousand Nine Hundred and Twenty Dollars and No Cents ($30,920.00).

v.      on or about September 28, 2007, Defendant sold approximately 946 TracFone Prepaid Phones to Incomtel for the approximate amount of Twenty-One Thousand Five Hundred and Fourteen Dollars and No Cents ($21,514.00).

w.      on or about October 8, 2007, Defendant sold approximately 996 TracFone Prepaid Phones to Incomtel for the approximate amount of Twenty-One Thousand Six Hundred and Eighty-Six Dollars and No Cents ($21,686.00).

x.      on or about October 24, 2007, Defendant sold approximately 2,244 TracFone Prepaid Phones to Incomtel for the approximate amount of Fifty-Three Thousand Five Hundred and Eleven Dollars and No Cents ($53,511.00).

y.      on or about November 8, 2007, Defendant sold approximately 4,043 TracFone Prepaid Phones to Incomtel for the approximate amount of Ninety-Three Thousand Six Hundred and Fifty Dollars and No Cents ($93,650.00).

z.      on or about November 15, 2007, Defendant sold approximately 2,388 TracFone Prepaid Phones to Incomtel for the approximate amount of Sixty-Six Thousand Four Hundred and Twenty-Four Dollars and No Cents ($66,424.00).

aa.     on or about January 19, 2008, Defendant sold approximately 3,626 TracFone Prepaid Phones to Incomtel for the approximate amount of Eighty-Six Thousand Nine Hundred and Thirty-Two Dollars and No Cents ($86,932.00).

bb.     on or about February 11, 2008, Defendant sold approximately 1,473 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Six Thousand and Fifty-Seven Dollars and No Cents ($36,057.00).

cc.     on or about March 11, 2008, Defendant sold approximately 1,334 TracFone Prepaid Phones to Incomtel for the approximate amount of Thirty-Four Thousand Six Hundred and Seventy-Five Dollars and No Cents ($34,675.00).

dd.     on or about July 11, 2008, Defendant sold approximately 139 TracFone Prepaid Phones to Incomtel for the approximate amount of Three Thousand Six Hundred and Fourteen Dollars and No Cents ($3,614.00).

ee.     on or about October 30, 2008, Defendant sold approximately 6 TracFone Prepaid Phones to Incomtel for the approximate amount of Ninety-Nine Dollars and No Cents ($99.00).

60.     Upon information and belief, Defendant and/or its co-conspirators have also actively solicited Runners to purchase large quantities of TracFone Prepaid Phones from Target, Wal-Mart, Best Buy, and other retailers, for sale to Defendant.

61.     The active solicitation of Runners by Defendant and/or its co-conspirators includes contacting Runners and requesting that they obtain specific brands and models of TracFone Prepaid Phones.

62.     To further the Bulk Resale Scheme, Defendant and Runners, among other things, conspired and worked in concert to circumvent retailers' policies limiting the number of TracFone Prepaid Phones an individual may purchase.

63.     Defendant and Runners are often able to buy the Phones without paying State or other taxes associated with the purchase because of the large volume of Phones they purchase.

64.     An agreement and conspiracy existed and continues to exist between and among Defendant and other co-conspirators, to unlawfully bulk purchase, traffic and resell unlawfully reflashed and counterfeit TracFone Prepaid Phones under the Marks.

65.     Defendant knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy as set forth with more particularity in this Complaint.

66.     TracFone has been proximately damaged by the conspiracy and by Defendant's actions in furtherance of the conspiracy.

<u>**S**UBSTANTIAL **H**ARM **C**AUSED **B**Y **D**EFENDANT'S **M**ISCONDUCT</u>

67.     Defendant's actions substantially harm TracFone by depriving TracFone of the opportunity to recoup its losses on the sale of its TracFone Prepaid Phones and to earn profits by providing wireless service to legitimate TracFone consumers.

68.     Since Defendant often removed the Phones from their original packaging, removed the warranty information and/or shipped the Phones outside the United States, those Phones did not carry TracFone's manufacturer's warranty.  Accordingly, Defendant's actions invalidate the warranty associated with TracFone Prepaid Phones in its entirety.  Thus, TracFone Prepaid Phones sold by Defendant differ materially from the genuine TracFone Prepaid Phones sold by authorized TracFone retailers, all of which carry a manufacturer's warranty.

69.     In addition, removing the Phones from the original packaging, selling the Phones in packaging that is not approved by TracFone, and altering the TracFone Prepaid Software, irreparably harms TracFone because such actions deprive TracFone of the means to control the quality of its product.

70.     The conduct of Defendant, its unknown co-conspirators, and others who engage in the unlawful bulk purchasing, reflashing, and sale of reflashed and altered TracFone Prepaid Phones has also resulted in a shortage of available TracFone Prepaid Phones, thereby substantially harming TracFone and its relationship with retailers and consumers because TracFone is not able to supply retailers with sufficient handsets to satisfy the demand from legitimate consumers.  As a result, TracFone loses potential customers to competing wireless service providers.

71.     Defendant's action substantially harms TracFone and consumers who ultimately purchase TracFone handsets that have been improperly reflashed.  These reflashed TracFone Prepaid Phones will not work as intended.  Purchasers of these reflashed phones are unable to access TracFone Prepaid Wireless Service.  Consumers of the reflashed phones are misled as to the source, sponsorship and origin of their reflashed TracFone Prepaid Phones.

72.     The process of reflashing or unlocking a TracFone Prepaid Phone voids the manufacturer's warranty on the device.  In addition, the sale of a TracFone Prepaid Phone outside of the United States also voids the manufacturer's warranty.  Both consumers and TracFone are harmed when a TracFone Prepaid Phone that has been altered or sold outside of this country by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on reflashed Phones or Phones sold abroad, consumers who purchase Phones from Defendant or its co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones.  As a result, TracFone's reputation suffers further.

73.     Defendant's conduct has also resulted in the dilution of TracFone's trademarks, substantial harm to TracFone's business reputation and goodwill, and a greater likelihood of confusion, mistake and deception as to the source of origin of TracFone products unlawfully sold by Defendant and as to the relationship between TracFone and Defendant.

### CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

74.     Federal courts have recognized that conduct similar or identical to Defendant's conduct is unlawful.

75.     TracFone has filed various independent lawsuits in the United States District Courts for the Southern District of Florida, the Middle District of Florida, the Northern District of Texas, the Southern District of Texas, the Eastern District of New York, Southern District of New York, Western District of Oklahoma, the Central District of California, the Northern

District of California, the Western District of Pennsylvania, and the Northern District of Georgia against other defendants similarly engaged in the practice of defrauding legitimate consumers and TracFone, by bulk purchasing prepaid wireless telephones and reflashing, repackaging, and reselling the counterfeit prepaid wireless phones for profit.  Other wireless service providers, including AT&T, T-Mobile USA, IDT, and Virgin Mobile have also filed similar lawsuits, as have wireless handset manufacturers Nokia and Motorola.

76.     TracFone, AT&T, T-Mobile, Virgin Mobile, IDT, Motorola and Nokia have all obtained Final Judgments and Permanent Injunctions in these cases, sample copies of which are attached as **Composite Exhibit "D."**

<u>**CAUSES OF ACTION**</u>

**COUNT ONE**
<u>**FEDERAL TRADEMARK INFRINGEMENT**</u>

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

77.     Defendant's and/or its co-conspirators' aforementioned conduct constitutes use of the Marks without authorization in connection with its conspiracy to sell and offer for sale reflashed and counterfeit TracFone Prepaid Phones, which downstream customers will discover are not capable for use with the TracFone prepaid wireless service.

78.     Defendant's and/or its co-conspirators' use of the Marks in connection with the sale of reflashed and counterfeit TracFone Prepaid Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's counterfeit products, and the relationship between TracFone and Defendant.

79.     Defendant's and/or its co-conspirators' unauthorized use of the Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

80.     Defendant's and/or its co-conspirators' use and sale of the Marks in connection with the reflashed and counterfeit TracFone Phones, which are no longer capable of use with the TracFone prepaid wireless service constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of effort and expense by TracFone over a long period of time.   Defendant's and/or its co-conspirators' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant has some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

81.     Defendant, in committing the foregoing acts in commerce, has damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and has been unjustly enriched and will continue to unjustly enrich itself at the expense of TracFone. TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

82.     Defendant's aforesaid acts constitute willful infringement of TracFone's federally registered trademarks in violation of 15 U.S.C. §1114.

## COUNT TWO
### FEDERAL UNFAIR COMPETITION

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

83.     Defendant's and/or its co-conspirators' aforementioned conduct constitutes use of TracFone's Marks without authorization in connection with their conspiracy to sell and offer for sale reflashed and counterfeit TracFone Prepaid Phones, which downstream customers will discover are not capable for use with the TracFone prepaid wireless service.

84.     Defendant's and/or its co-conspirators' use of the Marks in connection with the sale of reflashed and counterfeit TracFone Prepaid Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's counterfeit products, and the relationship between TracFone and Defendant.

85.     Defendant's and/or its co-conspirators' unauthorized use of the Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

86.     Defendant's and/or its co-conspirators' use and sale of the Marks in connection with the reflashed and counterfeit TracFone Phones, which are no longer capable of use with the TracFone prepaid wireless service constitutes a misappropriation of TracFone's distinguishing and identifying Marks that were created as a result of effort and expense by TracFone over a long period of time.  Defendant's and/or its co-conspirators' use of the Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant has some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

87.     Defendant, in committing the foregoing acts in commerce, has damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and has unjustly enriched and will continue to unjustly enrich itself at the expense of TracFone.  TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

88.     Defendant's aforesaid acts constitute willful infringement of TracFone's Marks in violation of 15 U.S.C. §1125(a).

## COUNT THREE
### BREACH OF CONTRACT

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

89.     By purchasing TracFone Prepaid Phones, Defendant acknowledged and agreed to the Terms and Conditions included with each Phone as conspicuously printed on the package and as contained in the printed inserts packaged with the Phones.

90.     The Terms and Conditions constitute a valid binding contract between TracFone and Defendant.

91.     TracFone has performed or tendered performance in accordance therewith.

92.     Defendant has breached the Terms and Conditions by, inter alia, purchasing TracFone Prepaid Phones with the specific intent to reflash or unlock the phones or ship the phones outside of the United States.

93.     TracFone has suffered damages as a result of Defendant's breach of the Terms and Conditions.

## COUNT FOUR
### CONTRIBUTORY TRADEMARK INFRINGEMENT

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

94.     By misappropriating and using the Marks in connection with the Bulk Resale Scheme, Defendant knowingly aided and enabled distributors and/or sellers of its products to market them to members of the general public in a way that infringes the Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

95.     Defendant's unlawful, unauthorized, and unlicensed sale of the reflashed or unlocked TracFone Prepaid Phones has thus contributed to the creation of express and implied misrepresentations that the TracFone Prepaid Phones, as sold by Defendant, were created, authorized, or approved by TracFone, and may be used with TracFone's prepaid wireless service.

96.     Upon information and belief, Defendant's conduct has led to post-sale confusion by causing consumers who purchase TracFone Prepaid Phones altered by Defendant to believe that they are purchasing handsets with software licensed or approved by TracFone.

97.     Defendant's conduct constitutes contributory infringement in violation of the Trademark Act.  Defendant's conduct is intentional, malicious and willful.

98.     TracFone has suffered substantial damages as a result of Defendant's contributory infringement.

## COUNT FIVE
### COPYRIGHT INFRINGEMENT OF THE PREPAID SOFTWARE

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

99.     TracFone has the exclusive right to reproduce and prepare derivative works of its federally copyrighted TracFone Prepaid Software pursuant to 17 U.S.C. §106.

100.    Defendant's and/or its co-conspirators' actions in reflashing or otherwise modifying the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized derivate work of the TracFone Prepaid Software.

101.    Defendant's and/or its co-conspirators' actions in improperly reflashing the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized reproduction of the TracFone Prepaid Software.

102.    Defendant knew or should have known its conduct constituted copyright infringement under Title 17 of the United States Code.

103.    Defendant's actions have damaged and will continue to irreparably injure TracFone unless Defendant's conduct is enjoined by this Court.

**COUNT SIX**
**CIRCUMVENTION OF COPYRIGHTED SOFTWARE PROTECTION SYSTEM**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

104.    The TracFone Prepaid Software contains technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with TracFone's authority, to gain access to the proprietary software, as set forth in 17 U.S.C. §1201.

105.    The TracFone Prepaid Software contains technological measures that effectively control access to the proprietary software.

106.    TracFone did not give Defendant or its co-conspirators authority to reflash, unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the TracFone Prepaid Software.

107.    TracFone did not grant Defendant or its co-conspirators the authority to circumvent the technological measures for effectively controlling access to the TracFone Prepaid Software.

108.    Defendant acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair a technological measure for effectively controlling access to the proprietary software without TracFone's authority.

109.    Defendant engaged in this misconduct for the purpose of reselling the altered devices for a profit, and not for the sole purpose of lawfully connecting to a wireless telephone communication network.

110.    Defendant acted to, and/or knowingly engaged in, a conspiracy designed to circumvent a technological measure that effectively controls access to the TracFone Prepaid Software that is protected under title 17 of the United States Code, and thereby violated 17 U.S.C. §1201.

111.    Defendant's and/or its co-conspirators' conduct does not fall within any of the exemptions.

112.    Defendant's conduct has caused and, unless restrained, will continue to cause TracFone severe, immediate, and irreparable injury and damages for which TracFone has no adequate remedy at law.  TracFone is entitled to injunctive relief restraining such conduct, an award of damages, including punitive damages, as well as other equitable and legal relief.

## COUNT SEVEN
### TRAFFICKING IN CIRCUMVENTION TECHNOLOGY

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

113.    Defendant is knowingly facilitating co-conspirators who are in possession of certain instrumentalities that avoid, bypass, remove, disable, deactivate, or otherwise impair the technological measures within the TracFone Prepaid Software that effectively control access to the proprietary TracFone Prepaid Software.

114.    Defendant is knowingly facilitating co-conspirators who are trafficking in the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification.

115.    Individuals purchasing altered phones from Defendant and/or its co-conspirators purchase both the TracFone Prepaid Phone and the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification provided by Defendant or its co-conspirators.

116.    Accordingly, Defendant is knowingly facilitating co-conspirators who are, trafficking in the service of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software by offering to the public its alteration service for a fee.

117.    Defendant's or its co-conspirators' conduct does not fall within any of the exemptions.

118.    The service of altering the TracFone Prepaid Software in TracFone Prepaid Phones is primarily designed or produced for the purpose of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software that is protected under title 17 of the United States Code.

119.    Accordingly, Defendant has violated, and continue to violate, Section 1201 of the Copyright Act and, as a result, TracFone has been irreparably injured and will continue to be irreparably injured unless the violating activities of Defendant is enjoined by this Court.

120.    The service of altering the TracFone Prepaid Software has, at most, only a limited commercially significant purpose or use other than circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software that is protected under title 17 of the United States Code.

121.     Therefore, Defendant has violated, and continues to violate, Section 1201 of the Copyright Act and, as a result, TracFone has been irreparably injured and will continue to be irreparably injured unless the violating activities of Defendant is enjoined by this Court.

## COUNT EIGHT
### TORTIOUS INTERFERENCE WITH A CONTRACTUAL RIGHT IN VIOLATION OF FLORIDA COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

122.     Runners who purchased TracFone Phones that were ultimately sold to Defendant entered into a valid, binding contract with TracFone pursuant to the Terms and Conditions set forth on the packaging of the handset.

123.     In accordance with the Terms and Conditions, the original purchasers of the Phones (the Runners) agreed that the Phones would be used in the United States, that the TracFone Prepaid Software would not be hacked or otherwise altered, and that the Phones would be used exclusively with TracFone prepaid wireless airtime cards.

124.     Defendant's actions complained of herein were made with full knowledge and awareness of the contractual provisions regarding the use of and tampering with the Phones.

125.     Defendant has, without legitimate justification, engaged in intentional, improper acts, in violation of the law, which were designed to induce a breach or disruption of the contractual relationships between TracFone and the Runners.

126.     TracFone has been proximately damaged and continues to be damaged as a result of Defendant's interference.

127.     Defendant's conduct constitutes interference with contract.

128.    Defendant's conduct was intentional, malicious, and willful, such that an award of punitive damages is appropriate.

## COUNT NINE
### CONSPIRACY TO INDUCE BREACH OF CONTRACT

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein:

129.    TracFone had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

130.    Defendant had knowledge of the contracts between TracFone and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with TracFone.

131.    The breach of the contracts was proximately caused by Defendant's misconduct.

132.    TracFone suffered damages as a result.

## COUNT TEN
### CIVIL CONSPIRACY IN VIOLATION OF FLORIDA COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

133.    An agreement and conspiracy existed and continues to exist between and among Defendant and other co-conspirators, to unlawfully bulk purchase, traffic and resell unlawfully reflashed and counterfeit TracFone Prepaid Phones under the Marks.

134.    Defendant knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy as set forth with more particularity in this Complaint.

135.    TracFone has been proximately damaged by the conspiracy and Defendant's actions in furtherance of the conspiracy.

## COUNT ELEVEN
### UNJUST ENRICHMENT IN VIOLATION OF FLORIDA COMMON LAW

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 73, as though fully set forth herein.

136.    By bulk purchasing the TracFone Prepaid Phones below the manufacturers' cost of the phones, Defendant obtained benefits from TracFone that has resulted in significant financial benefits to Defendant through its resale of the bulk purchased TracFone Prepaid Phones.

137.    Defendant acquired the benefits voluntarily and with full knowledge.

138.    Defendant has retained the benefits under such circumstances that make it unjust and inequitable for Defendant to retain the benefits without paying TracFone the value of the benefits Defendant acquired.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff TracFone Wireless, Inc., a Delaware corporation, respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of TracFone and against Defendant ComerCel Comercializadora de Celulares, S.A. de C.V., a foreign corporation as follows:

a.    awarding TracFone its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill and damage to its reputation, as provided by law, together with pre and post-judgment interest;

b.    awarding to TracFone restitution of all money and property unlawfully and unfairly taken by Defendant through its unfair and unlawful conduct;

c.    awarding TracFone permanent injunctive relief against Defendant and enjoining Defendant from engaging in the unlawful practices described in this Complaint;

18236318.2                                    34

       d.      requiring Defendant, pursuant to the Lanham Act, to deliver its entire inventory of phones bearing or infringing any of the Marks or a confusingly similar copy thereof, to TracFone;

       e.      awarding TracFone its reasonable attorneys' fees and costs of this action; and,

       f.      granting such further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff TracFone Wireless, Inc. hereby demands a trial by jury on all triable issues.

Dated: February 18, 2011      By: _____

       Steven J. Brodie (FL Bar # 333069)
       Email:  sbrodie@carltonfields.com
       Aaron S. Weiss (FL Bar #48813)
       Email:  aweiss@carltonfields.com
       **CARLTON FIELDS, P.A**
       100 Southeast Second Street, Suite 4200
       Miami, Florida  33131
       Telephone No.  (305) 530-0050
       Facsimile No.   (305) 530-0055

       James B. Baldinger (FL Bar # 869899)
       Email: jbaldinger@carltonfields.com
       **CARLTON FIELDS, P.A**
       1200 CityPlace Tower
       525 Okeechobee Boulevard
       West Palm Beach, Florida 33401
       Telephone No.  (561) 659-7070
       Facsimile No.   (561) 659-7368

       *Attorneys for Plaintiff TracFone Wireless, Inc.*